IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEBRA D. BAILEY,            )
                            )
    PLAINTIFF,              )
                            )
VS.                         )    CV97-H-0571-S
                            )
COMMUNITY BIO-RESOURCES, INC., )
                            )
    DEFENDANT.              )

FILED
98 JAN 23 AM 8:
U.S. DISTRICT CC
N.D. OF ALABA

ENTERED
JAN 23 1998

## MEMORANDUM OF DECISION

Defendant Community Bio-Resources, Inc. ("CBR") filed a motion for summary judgment on December 1, 1997 seeking summary judgment on all of plaintiff's claims. Pursuant to the court's December 2, 1997 order, the motion was deemed submitted, without oral argument, to the court for decision as of December 30, 1997.

CBR filed its speaking motion for summary judgment on December 1, 1997 attaching its supporting evidence.[1] On December 23, 1997, plaintiff submitted an affidavit of plaintiff and the deposition of Beth Singletary in opposition to the motion with express intentions to rely on the depositions submitted by defendant previously. Plaintiff filed her brief in opposition to the motion on December 30, 1997. Plaintiff also supplemented her

---

[1] Defendant's evidence in support of the motion included: the depositions of plaintiff, Terre Sutherland and Elizabeth Butterworth; the affidavit of Beth Singletary; and the job application for Donna Aaron with notes from her interview. See Attachments to Defendant's December 1, 1997 Motion.



brief with a copy of a newly decided Eleventh Circuit case[2] provided by a January 8, 1998 letter.

## I. BACKGROUND

### A. Procedural Background

Plaintiff commenced this action on March 6, 1997 when she filed a complaint alleging that defendant CBR discriminated against her based on her race in hiring, thereby violating Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, as amended, and 42 U.S.C. § 1981. CBR answered the complaint denying that its decision not to hire plaintiff was based on her race.

In its motion, CBR argues that it is entitled to summary judgment because plaintiff failed to present evidence that CBR's articulated legitimate non-discriminatory reasons for its decision not to hire plaintiff were pretextual. Plaintiff opposes the motion and argues that she has created a material factual dispute concerning the articulated reasons for CBR's decision not to hire her in the desired position.

### B. Factual Background

The following facts are undisputed. CBR operates plasmapheresis centers, commonly known as plasma donor centers, across the United States. *See* Teresa Sutherland depo. 12-13. The testing of all CBR's plasma samples occurs in its Birmingham,

---

[2] The case provided was *Carter v. Three Springs Residential Treatment*, 1998 WL 2459 (11th Cir. 1998).

2

Alabama laboratory. Id. Medical Laboratory Technicians ("MLTs") perform the actual testing on the plasma samples at CBR. Id. at 32. In order to work as a MLT, CBR requires a two-year associate MLT degree or a four-year bachelors degree in a scientific field. Id. at 34; see also Butterworth depo. 42.

CBR placed a newspaper advertisement in December of 1995, for MLT positions in its Birmingham, Alabama laboratory. See Sutherland depo. 32-34. At that time, CBR had one MLT position immediately available with plans of hiring two more MLTs to perform new tests mandated by the FDA, once the FDA tests were licensed. See Sutherland depo. 31-34, 92-93; Bailey depo. 82; Butterworth depo. 50-51.

On or around January 17, 1996, plaintiff submitted a job application to CBR in response to the newspaper job advertisement. See Bailey depo. 80-81. At that time, the employees in CBR's Birmingham laboratory included: eleven white employees, eight black employees and two Asian employees.[3] See Affidavit of Beth Singletary. Later, Elizabeth Butterworth, Assistant Laboratory Director for CBR, called plaintiff and requested that she interview with CBR for an MLT position. Id. The interviewing and hiring for the MLT positions and other lab positions were handled by Teresa Sutherland, Laboratory Director, and Butterworth, either singularly or jointly. See Sutherland

---

[3] Two days after plaintiff submitted her application, CBR hired a black female as a laboratory assistant, bringing the number of black employees to nine of twenty-one. See Affidavit of Beth Singletary.

3

depo. 16, 20-31; Butterworth depo. 13-14, 34-36. In plaintiff's case Butterworth alone interviewed plaintiff and made the recommendation to Sutherland not to hire plaintiff. Id. at 158; Butterworth depo., Ex.1, Ex.B.

After announcing the MLT openings in December of 1995, CBR interviewed five candidates for the MLT positions. See Ex. 4 to Sutherland depo.; see also Butterworth depo. 24. All of the five candidates met the necessary educational requirements for the MLT position. See Sutherland depo. 25. Plaintiff received an MLT degree from Faulkner University in 1986 and an MLT Certificate from UAB in 1987. See Bailey depo. 15, Ex.1. Plaintiff previously worked with Red Cross as an MLT for over four years and during that time became a supervisor at Red Cross. Id. at 24-26, Ex.1. While working at Red Cross, plaintiff gained experience working with machinery similar to that to be used at CBR. Id. at 83.

According to Butterworth, plaintiff did not ask a lot of questions about the laboratory and did not display much interest in the laboratory facility during her interview.[4] See Butterworth depo. 56-57,66. In particular, Butterworth testified that she felt that plaintiff's response about her returning to bench work was not enthusiastic and indicated that she would take the job and do the work, but Butterworth was "not sure that her

---

[4] Butterworth admitted that plaintiff likely asked a question during the interview, but stated that plaintiff was not inquisitive enough to project genuine enthusiasm. See Butterworth depo. 56-57, 66, 84.

heart would be in it." Id. at 68.  Plaintiff did not appear very eager to have the position, according to Butterworth.  Id. at 69. Butterworth testified that her decision not to recommend plaintiff for the MLT positions was based on plaintiff's lack of enthusiasm and poor demeanor during the interview.[5]  Id. at 68-70.

CBR hired a white female, Carla Phillips, for the first MLT opening.  See Sutherland depo. 89; Butterworth depo. 53. Butterworth telephoned plaintiff and told her that another person had been hired for the position that was open at that time, but CBR would fill two more MLT positions in the near future and would keep her application for one year.  See Bailey depo. 94, 98-99.

In Spring of 1996, CBR placed another advertisement in the newspaper for available MLT positions.[6]  See Sutherland depo. 31-

---

[5] During her deposition, Butterworth also testified that her decision not to recommend plaintiff for the MLT position was based on what she perceived to be lack of professionalism when plaintiff inappropriately referred to laboratory instruments as "gadgets," stating that some of the "gadget looked familiar" to her.  See Butterworth depo. 57, 59-60.  However, in her affidavit plaintiff disputes making such a statement.  According to plaintiff, she is certain that she "never referred to instruments, equipment or anything else as 'gadgets'" during her interview with Butterworth and at no time referred to anything as "gadgets" to anyone with CBR.  See Plaintiff's Affidavit. Construing all facts in the light most favorable to plaintiff for purposes of this motion, the court assumes that plaintiff made no mention of the term "gadgets" to anyone at CBR.

[6] Originally CBR planned to hire two new MLTs based on the FDA's approval of new testing requirements.  See Sutherland depo. 31-32, 92-95; Butterworth depo. 50-51.  However, in late May, due to current employees leaving, CBR had two more MLT positions available, rendering a total of four MLT positions available. See Sutherland depo. 124-25.

32, 92-95. Sutherland and Butterworth interviewed fourteen new applicants in order to fill these positions, in addition to continuing to consider the four applicants interviewed in early 1996. See Butterworth depo. 91-92; Sutherland depo., Exs. 4 & 14.

Following the interviews, CBR hired four MLTs. See Sutherland depo., Ex. 14. Three of the MLTs hired were black females and one new MLT was a white female.[7] Id. Butterworth had interviewed the three black females hired as MLTs, while Sutherland interviewed the white female hired. See Butterworth depo. 91, 95; Sutherland depo. 109. After the vacant MLT positions were filled, CBR's laboratory contained twenty-five employees with eleven white employees, ten black employees and two Asian employees. See Singletary Affidavit. All of these employees, except for Teresa Sutherland, were hired by Sutherland with some decisions based on recommendations from Butterworth. See Singletary Affidavit; Butterworth depo. 13, 34-36; Sutherland depo. 29-30.

Plaintiff filed a charge of discrimination with the EEOC on May 9, 1996. See Ex. 13 to Sutherland depo. On May 13, 1996 CBR

---

[7] CBR made offers to two white females, Judy Wyatt and Kris Simpson, who did not accept the job offer. See Sutherland depo. 114-15 & Ex. 14. Judy Wyatt had worked with plaintiff at Red Cross in a supervisory capacity similar to the position held by plaintiff. See Bailey depo. 95-97, 102-105. One of the black applicants received her job offer after Wyatt and Simpson, two white applicants, turned down the job. See Butterworth depo. 108-09.

6

sent plaintiff a letter informing her that it was unable to offer her employment. See Sutherland depo., Ex. 12.

## II. LEGAL ANALYSIS

### A. Standard for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115

7

(11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

8

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>Lewis v. Casey</u>, _____ U.S. _____, 116 S.Ct. 2175 (1996).

The Eleventh Circuit has stated that district courts should use caution when taking employment discrimination cases away from the jury by means of summary judgment. <u>Isenbergh v. Knight-Ridder Newspaper Sales, Inc.</u>, 84 F.3d 1380, 1384 (11th Cir. 1996). However, the Eleventh Circuit also recognizes that "[s]ummary judgments . . .are not rare in employment discrimination cases." <u>Earley v. Champion International Corp.</u>,

907 F.2d 1077, 1080. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which is designated 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Given the ease of complying with the notice pleading requirements in asserting a discrimination claim, the Eleventh Circuit encourages district courts that "plaintiffs seeking to avoid summary judgment should be strictly held to the requirements of Rule 56(e); the plaintiff must present specific non-conclusory facts that would support a jury verdict against the particular defendant on discriminatory intent." Ratliff v. DeKalb County, 62 F.3d 338, 341 (11th Cir. 1995).

### B.  Analysis of Plaintiff's Title VII and § 1981 Claims

Where a plaintiff's discrimination claim[8] is based on circumstantial evidence, the court employs the shifting-burden framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a prima facie case of discrimination.[9] Here there

---

[8] Analysis under the McDonnell Douglas framework is appropriate for both Title VII and § 1981 claims. Vance v. Southern Bell Telephone and Telegraph Co., 863 F.2d 1503, 1509 (11th Cir. 1989).

[9] In order to present a prima facie case of discrimination, plaintiff must show: (1) that she belongs to a protected class; (2) that she applied and was qualified for a position for which the employer was seeking applicants; (3) that she was rejected;

10

appears to be no dispute that plaintiff has presented the necessary evidence to make out a prima facie case.

Second, after plaintiff has presented a prima facie case, the burden of production shifts to the defendant, requiring an articulation of some "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). "[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted." Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 950 (11th Cir. 1991), cert. denied, 502 U.S. 1058 (1992) (quoting Grigsby v. Reynolds Metals Co., 821 F.2d 590, 596 (11th Cir. 1987)). In this case, CBR has presented evidence asserting that Butterworth decided not to recommend plaintiff for the vacant MLT positions based on her lack of professionalism and poor demeanor, as evidenced by her reference to certain machines as "gadgets", failure to ask a lot of questions and the absence of any appearance of sufficient eagerness concerning the job.

"At the summary judgment stage, once an employer articulates a legitimate, nondiscriminatory reason for the discharge, the burden shifts back to plaintiff to raise a genuine factual question as to whether the stated reason is mere

---

and (4) that, after the rejection, the position remained open and the employer continued to seek applicants for persons of plaintiff's qualifications. McDonnell Douglas, 411 U.S. at 802. Based on O'Connor v. Consolidated Coin Caterers Corp., ___ U.S. ___, 116 S. Ct. 1307, 1310 (1996), plaintiff need not show that the position at issue was filled by a person outside the protected class.

11

pretext." <u>Cortin v. Southland Int'l Trucks</u>, 25 F.3d 1545, 1550 (11th Cir. 1994); <u>Hairston v. Gainesville Sun Publ. Co.</u>, 9 F.3d 913, 920 (11th Cir. 1993). Plaintiff may prove that the defendant intentionally discriminated against him either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Carter v. City of Miami</u>, 870 F.2d 578, 584 (11th Cir. 1989).

In <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519 (11th Cir. 1997), the Eleventh Circuit clearly establishes the standard for determining whether plaintiff has sufficiently met his or her burden on the issue of pretext to survive summary judgment.[10] "[A] plaintiff is entitled to survive summary judgment . . . if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of **each** of the employer's proffered reasons for its challenged decision." <u>Combs</u>, 106 F.3d at 1529 (emphasis added). There is no question that presently the law of this circuit provides that in Title VII cases, "a jury

---

[10] The conspicuous absence of any mention of the <u>Combs</u> case by defendant in its brief is disappointing and brings the integrity of defendant's legal argument somewhat into question. Due to defendant's failure to discuss the <u>Combs</u> opinion at the summary judgment stage, it is somewhat misleading or, at least, an incomplete discussion of the law to state that "[e]ven if a plaintiff were to demonstrate that the defendant's articulated reason is merely pretextual, the plaintiff is not necessarily entitled to prevail, but must meet an ultimate burden of establishing that the challenged employment action was the result of intentional discrimination." <u>See</u> Defendant's Motion for Summary Judgment, p.8-9, at ¶ 12. While this remains true at trial, this standard of proof no longer applies to determinations of summary judgment motions.

12

question is created when a prima facie case is coupled with evidence sufficient to permit a reasonable factfinder to disbelieve an employer's proffered reasons for the challenged action." Id. at 1534.

When deciding whether to grant a motion for summary judgment, the district court must view all evidence, making all reasonable inferences in favor of plaintiff, and determine whether plaintiff has cast sufficient doubt on each of defendant's proffered reasons to allow a reasonable factfinder to conclude that these proffered reasons were not the actual motivation for defendant's conduct. Combs, 106 F.3d at 1529 & 1537. "The district court must evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" Id. at 1537(quoting Sheridan v. E.I. DuPont De Nemours & Co., 100 F.3d 1061, 1071 (3d Cir. 1996)(en banc)).

In her presentation, plaintiff has specifically disputed any reliance by defendant on her use of the term "gadgets". See Bailey Affidavit. Plaintiff's affidavit creates a disputed factual issue as to that articulated reason by stating that plaintiff never used the term "gadget" when talking with anyone at CBR. Id.

Plaintiff has failed to present any evidence to dispute the other articulated reasons given by Butterworth for her decision

13

not to recommend plaintiff for the vacant position. Instead, plaintiff attempts to dispute Butterworth's evaluation of plaintiff as not asking a lot of questions and not exhibiting adequate eagerness concerning the MLT job as unfounded through hypothetical argument. Plaintiff argues that due to plaintiff's knowledge gained for past experience and Butterworth's adequate explanation of the workplace to plaintiff at the interview, Butterworth's assessment of plaintiff as asking too few questions is weak. The court views these arguments as unpersuasive.

Plaintiff challenges the "subjective" nature of Bailey's assessment that plaintiff was not asking a lot of questions and not being sufficiently eager concerning the MLT job. Recently the Eleventh Circuit has pointed out that "there is nothing inherently wrong with allowing decision makers to base decisions on subjective criteria." Carter v. Three Spring Residential Treatment, ___ F.3d ___, 1998 WL 2459 (11th Cir. 1998). Yet, the Eleventh Circuit warned that such subjective evaluations may provide a ready mechanism for racial discrimination. Carter, 1998 WL 2459 at *9 (citing Miles v. MNC Corp., 750 F.2d 867, 871 (11th Cir. 1985)).

When considering employment discrimination claims, this court does "not sit as a super-personnel department to reexamines an entity's business decisions.'" Alphin v. Sears, Roebuck & Co., 940 F.2d 1497, 1501 (11th Cir. 1991). Rather, the court's inquiry is limited to determining if there is sufficient evidence to create a material factual dispute as to whether the

14

employer articulated an honest explanation of its behavior with any judgment call based on a good faith belief. <u>Elrod v. Sears, Roebuck and Co.</u>, 939 F.2d 1466, 1470 (11th Cir. 1991). The employer can refuse to hire an employee for a good reason, bad reason, a reason based on erroneous facts, a reason based on poor judgment or for no reason at all, as long as the actions are not based on discriminatory purposes. <u>Nix v. WLCY Radio/Rahall Comm.</u>, 738 F.2d 1181, 1187 (11th Cir. 1984).

The evidence presented fails to support plaintiff's claims that Butterworth's use of the enthusiasm factor was a guise for racial discrimination in hiring. Butterworth described the three black females she interviewed that were later hired as MLTs, rather than plaintiff, in terms such as: "very enthusiastic;" "had a great attitude;" "really wanted the position;" "interested in the position;" and "asked a lot of questions about how we worked." <u>See</u> Butterworth depo. 99, 116-18. The interview notes indicate that when evaluating both the white and black candidates during the interview CBR representatives immediately placed importance on their judgments of candidates' enthusiasm and if they appeared very willing to work in that job and if candidates asked many questions. <u>See</u> Sutherland depo, Exs. 15, 16, 22. Both the interview notes completed during or shortly after the time of the interviews and the deposition testimony of Butterworth recalling her impressions of the candidates support her reliance on enthusiasm and the amount of questions asked by plaintiff as a non-racial, business reason for her hiring

recommendations. Plaintiff has been unable to point to anything, other than the "subjective" nature of these factors, as supporting its claims that these proffered reasons are unworthy of belief by a reasonable juror.

Plaintiff argues that inconsistencies and contradictions indicate that a reasonable person would disbelieve these proffered reasons. However, the interview notes and Butterworth's recollection of her decision making process are consistent and supportive of the articulated reasons for not recommending plaintiff for hiring.

Plaintiff also attempts to dispute defendant's articulated reasons concerning plaintiff's lack of eagerness as to the MLT job by pointing to testimony by both Butterworth and plaintiff indicating that plaintiff communicated to Butterworth that she wanted the job and would do the job. In particular, plaintiff focuses on her testimony that "what really aroused [her] enthusiasm was the equipment that the techs were using in the laboratory was the same equipment that [she] had used at Red Cross. And [she] told Betty [Butterworth] that." See Bailey depo. 83. Plaintiff classifies Butterworth's assessment that plaintiff was not enthusiastic as inconsistent with plaintiff's known desire to have the job. After reviewing all the evidence, this appears to be an oversimplification. It is logical that an employer could have a good faith belief that there is a difference between an applicant who wants a job or needs a job badly and an applicant who wants to do the type of work involved

16

in the job or one who is excited about doing that particular job.

Plaintiff successfully created a disputed factual issue concerning defendant's assertion that it decided not to hire her based on her use of the work "gadget." However, plaintiff has failed to present sufficiently probative evidence to allow a reasonable fact finder to reject the other articulated reasons for CBR's decision not to hire plaintiff as unworthy of credence.

Based on the foregoing, defendant's motion for summary judgment is due to be granted. A separate order will be entered.

DONE this 23rd day of January, 1998.

SENIOR UNITED STATES DISTRICT JUDGE